EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii

MICHAEL K. KAWAHARA  1460
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii  96850
Telephone:  541-2850
Facsimile:  541-2958
Mike.Kawahara@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CIVIL NO. 08-0225JMS |
| ) | CRIM. NO. 05-0300JMS-01 |
| Plaintiff, ) | |
| ) | MEMORANDUM IN OPPOSITION TO |
| VS. ) | 2255 PETITION; EXHIBIT "1" |
| ) | |
| LEANDRO GOMEZ, III, also ) | |
| known as "Leo", ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM IN OPPOSITION**
**TO 2255 PETITION**

The United States of America hereby opposes defendant Leandro Gomez, III's motion filed pursuant to 28 U.S.C. 2255 (hereinafter "2255 petition").

The instant case involved a methamphetamine trafficking conspiracy involving ten defendants which encompassed Las Vegas, NV, and Maui, HI, in 2005.  Leandro Gomez, residing in Las Vegas,

was the lead defendant and the primary methamphetamine supplier for his fellow conspirators/co-defendants residing on Maui. As this Court aptly noted when sentencing him:

> There's no question this was a sophisticated, multi-state, large methamphetamine distribution conspiracy. There's no question about it and that Mr. Gomez, this Mr. Gomez, not Gilbert but Leandro, was at the top of this conspiracy. He is, as Mr. Kawahara correctly stated, the lead defendant in this case and was the supplier of methamphetamine to Maui.
>
> There was a considerable quantity of methamphetamine and drugs that were distributed as a result of Mr. Gomez's activity. There was no question that there was a large- a very large amount of methamphetamine brought into a relatively small community, Maui, the Island of Maui, and that it had a clear detrimental impact of people's lives on that island.
>
> T.P.(10/30/06) at 20.

In his written plea agreement (attached hereto as Exhibit "1"), defendant expressly "agree[d] that he is an organizer, leader, manager, or supervisor of criminal activity within the meaning of Guideline 3B1.1(c), for which a two-level increase must be assessed". Ex. "1" at 11.[1]

In support of this "leadership" role, the stipulated factual basis in defendant's plea agreement also provided that:

> <u>Leandro Gomez was assisted in his methamphetamine trafficking activities in Las Vegas by co-defendants Timothy James Sullivan and Gilbert Gomez (the latter of whom was</u>

---

[1] There was no question that Leandro Gomez was fully aware of this "leadership" stipulation in the plea agreement. During the change-of=plea hearing, the prosecution summarized the plea agreement's essential terms and expressly referenced this specific stipulation; defendant acknowledged that the prosecution's summary was accurate. (T.P.(1/23/06) at 12, 14.

2

> Leandro Gomez's cousin and resided with him). Leandro Gomez would either have the methamphetamine delivered to couriers who [co-defendant Nathaniel] Russell sent to Las Vegas to pick it up, or have it mailed via small parcel service (as UPS) to a Maui address designated by Russell and his associates.
>
> Gilbert Gomez's assistance included picking up and dropping off at the Las Vegas Airport the persons who Russell sent to courier the purchase money to Las Vegas and carry the methamphetamine back to Maui. Gilbert Gomez would also take the purchase money from the couriers to Leandro Gomez and deliver the methamphetamine back to the couriers.
>
> Ex. "1" at 6.

The stipulated factual basis in Leandro Gomez's plea agreement also described a particular, seven-pound methamphetamine transaction in late May - early June 2005:

> On May 25-26, 2005, co-defendant Reed Kaleookalani Aken traveled from Maui to Las Vegas, NV. Reed Aken was couriering approximately $66,000 in cash for the purpose of purchasing about seven (7) pounds of methamphetamine from Leandro Gomez; Reed Aken was acquiring this methamphetamine for Russell and his Maui associates.
>
> Upon arrival in Las Vegas on May 26, 2005, Reed Aken gave the money to Gilbert Gomez, who in turn gave it to Leandro Gomez. Reed Aken thereafter received approximately two (2) pounds of methamphetamine from Leandro and Gilbert Gomez. [On his return trip back to Maui, police officers at the Los Angeles International Airport seized this methamphetamine from Aken].
>
> Ex. "1" at 8.

Shortly thereafter, on June 9, 2005, defendant and Sullivan mailed another methamphetamine parcel from Las Vegas to Russell's designated Maui address. As indicated in the plea agreement, this parcel "contained the methamphetamine which . . . constituted the remaining amount of the methamphetamine shipment

3

paid-for with the money Reed Aken had transported to Las Vegas on May 25 - 6, 2005". Ex. "1" at 9.[2]

Leandro Gomez's "leadership" role vis a vis Sullivan and Gilbert Gomez was also confirmed by Leandro's own admissions given after his arrest on July 21, 2005.  According to the Presentence Investigation Report ("PSR"), "Leandro indicated that Sullivan and [Gilbert] Gomez were his subordinates that were used to assist with his drug business".  See PSR at para. 50-1.  In addition, the PSR further reported that when co-defendant Sullivan was interviewed after his arrest, he advised that "approximately two months ago, he mailed a [methamphetamine] package to Maui, Hawaii, at Leandro's request".  PSR at para. 52.  Based upon the foregoing, the PSR concluded that a "leadership" role adjustment pursuant to Guideline 3B1.1(c) would be appropriate because:

> [i]n this case, the defendant made arrangements for others to transport 'ice' to Hawaii.  In addition, the defendant directed others in receiving money for drug purchases and deliverying 'ice'.  <u>In addition, the Plea Agreement indicates that the defendant agrees that he is entitled to a 2-level increase for being an organizer, leader, manager, or supervisor</u>.  Consequently, a 2-level increase is applicable.
>
> PSR at para. 64 [emphasis added].

---

[2] This was the second methamphetamine parcel which defendant and Sullivan had sent to Russell in mid-2005.  As also described in the plea agreement, they had previously mailed a four-pound methamphetamine shipment to Maui in early May 2005.  See Ex. "1" at 7-8.

All of these above-cited quotations first appeared in the draft PSR, and Leandro Gomez neither objected thereto in either his Sentencing Statement dated 8/8/06 nor at the sentencing hearing. T.P.(10/30/06) at 3-4.  More pertinent to the instant 2255 petition, Leandro Gomez himself expressly acknowledged at the sentencing hearing that he had had a full and fair opportunity to read, review and discuss the PSR and to make any objections he wished to make to that report, whether of a factual or legal nature.  T.P.(10/30/06) at 2.[3]

This Court consequently adopted all of the findings and conclusions of the PSR, including the two-level increase in Leandro Gomez's Base Offense Level for "leadership" role. T.P.(10/30/06) at 4.

In addition to being the lead defendant, Leandro Gomez also had an extensive criminal history.  He had one prior felony drug trafficking conviction, which meant that he faced an enhanced statutory minimum imprisonment sentence of twenty years under 21 U.S.C. 841(b)(1)(A).[4]  Furthermore, by virtue of this prior drug conviction and another violent felony conviction for coercion,[5] defendant was a "career offender" under Guideline 4B1.1.

---

[3] In point of fact, Leandro Gomez never lodged <u>any</u> objections to the PSR.

[4] <u>See</u> Special Information filed August 22, 2005.

[5] <u>See</u> PSR at para. 75.

Given the methamphetamine quantity, his leadership role, "career offender" status, and also according "acceptance of responsibility", Leandro Gomez's Total Offense Level (TOL) was "37", Criminal History Category VI, resulting in an advisory Guideline sentencing range of 360 months (30 years) - life imprisonment.

The prosecution also filed a downward departure motion on Leandro Gomez's behalf pursuant to Guideline 5K1.1, based upon his substantial assistance with respect to his potential testimony against co-defendant Gilbert Gomez.[6] This Court granted the motion during the sentencing hearing and departed downwards, sentencing him to 284 months (23.7 years) imprisonment.

Defendant thereafter appealed the Judgement in 9CCA C.A. No. 07-10037; the Ninth Circuit on September 28, 2007 affirmed defendant's conviction and dismissed the appeal pursuant to the plea agreement's appellate waiver.

In his 2255 petition, defendant only grieves the application of the two-level leadership role to him at sentencing, averring in his supporting memorandum at 2 that:

> [p]rior to sentencing of Movant, [trial defense counsel] Ken Elliot had informed Movant that if Movant would enter a guilty plea, the Kingpin Leadership role which had been

---

[6] Gilbert Gomez subsequently elected to plead guilty, thus obviating a need for a trial.

>       placed on Movant, would be dropped to a Manager role,[7] and
>       that Counsel would argue the Manager role to be dropped at
>       sentencing.  Counsel stated that he would argue that Movant
>       could not have any 'role' level imposed on him as Movant
>       never employed anyone to work under him in any capacity,
>       therefore demonstrating that there was not enough evidence
>       to support any type of 'role'.

In other words, if Leandro Gomez's 2255 petition is to be believed, his alleged concurrence in the plea agreement was a fraud.  Moreover, following through on the logic of Leandro Gomez's Sixth Amendment contention, his trial defense counsel was supposed to have breached the plea agreement-- not to mention his own "good faith" ethical obligations as an Officer of the Court-- by contradicting the "leadership" role stipulation.  This is an entirely incredible result.

It is hornbook law that "[i]f the allegations made in the [2255] motion are conclusively refuted by the record, then summary dismissal is appropriate. 28 Moore's Federal Practice

---

[7] By "Kingpin" leadership role, it is believed that Leandro Gomez is indicating that Mr. Elliot was able to successfully convince the prosecution during plea negotiations that defendant should be treated as a two-level "organizer/leader" under Guideline 3B1.1(c), rather than a three-level or four-level "organizer/leader" under Guidelines 3B1.1(a) or (b).  For the Court's information, this limited portion of defendant's 2255 petition is accurate.  The stipulation in the plea agreement for the lowest "leadership" role was the result of Mr. Elliot's superlative efforts in representing Leandro Gomez.

The respective levels of "leadership" role among the various defendants was a significant matter in this case as a whole.  As the Court may recall, co-defendant Nathaniel Russell was assessed the full, four-level increase for highest level of his "leadership" role.

672.03[3] (Matthew Bender 3d ed. 1997).  Accord, Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990).  We submit that this principle should be applied to summarily dismiss Leandro Gomez's instant 2255 petition.

First, contrary to Leandro Gomez's assertions, there was substantial evidence in the stipulated factual basis of the plea agreement and also garnered during the presentence investigation (and documented in the PSR) to permit this Court to find, independent of the plea agreement's stipulation, that he was a "an organizer, leader, manager, or supervisor of criminal activity" within the meaning of Guideline 3B1.1(c), for which a two-level increase was authorized.

Second, the credibility of Leandro Gomez's central contention in his 2255 petition-- namely, that he was expecting his trial defense counsel to contest the "leadership" role at sentencing-- is highly doubtful in the light of defendant's own conduct at the sentencing hearing.  Leandro Gomez himself had read the plea agreement and PSR and therefore knew that both documents called for the imposition of this "leadership" role. Consequently, when trial defense counsel neither made any objections to the PSR nor contested the "leadership role" assessment during his sentencing arguments, one would reasonably have expected that Leandro Gomez himself would have said something to the contrary.  In this regard, the best place for

8

Leandro Gomez to have asserted this was when this Court gave him the opportunity at sentencing to allocute. However, defendant was singularly silent in this regard; while he profusely apologized and mentioned a number of mitigatory/extenuating factors, he never disclaimed his "leadership" role. T.P.(10/30/06) at 11-2.

Moreover, it is no excuse for Leandro Gomez's silence in this regard at sentencing to claim he was "a layman of the law and had no prior litigation experience in any type of legal proceeding". 2255 petition, supporting memo at 2. As hereinbefore indicated, the instant case was defendant's third felony conviction. In other words, more than the typical defendant who appears before this Court, Leandro Gomez has had ample, "first-hand" experience with the criminal justice system. In other words, if he had perceived that he was not being properly represented during the sentencing phase of this case, Leandro Gomez would have contemporaneously sought to protect his rights. That he declined to do so says volumes about the credibility of his belated assertion.

<u>Lastly</u>, the self-serving remedy which Leandro Gomez has sought in his 2255 petition-- namely, to re-sentence him without regard to "leadership" role, but to simultaneously keep the remainder of his plea agreement intact in his favor (including but not limited to the validity of his plea, and presumably

9

maintaining the benefit of the previously-filed downward departure motion)[8]-- further demonstrates the lack of credibility of his 2255 petition's contention.  If Leandro Gomez's allegations were in fact true, then his proper remedy would logically be to seek to set aside the plea agreement and to withdraw his guilty plea.  Of course, the consequences thereof would be that he would have to go to trial and if convicted, lose the sentencing benefit of certain mitigating factors (as "acceptance of responsibility" under Guideline 3E1.1).  Moreover, given his express admission that his earlier concurrence in the plea agreement vis a vis "leadership" role was entirely fraudulent, thereby placing his overall credibility in considerable doubt and consequently, the prosecution would hardly re-file a "substantial assistance" departure motion under these circumstances.  The long and the short of it is that Leandro Gomez's instant 2255 petition is too obviously a "convenient lie" that cannot be used to reduce his adjudged sentence.

   Furthermore, in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to evaluate ineffective assistance of defense counsel claims.  The defendant must prove: <u>first</u>, that his counsel's performance fell below an objective standard of reasonableness, and <u>second</u>, that

---

[8] <u>See</u> 2255 petition's supporting memorandum at 4-5.

counsel's deficient performance actually prejudiced the defendant.

Under the first prong, there is a "strong presumption" that defense counsel's strategy and tactics fell "within the wide range of reasonable professional assistance". Strickland, 466 U.S. at 689.  The Ninth Circuit has further clarified this to mean that ". . . a reviewing court is not free to engage in after-the-fact second guessing of strategic decisions made by defense counsel.  Instead, judicial scrutiny of 'counsel's performance must be highly deferential' [quoting from Strickland]". United States v. Claiborne, 870 F.2d 1463, 1468 (9th Cir. 1989).

If Leandro Gomez is to be believed, then his trial defense counsel was supposed to engage in nonsensical advocacy.  Indeed, no competent defense attorney would ever stipulate to a particular matter in the plea agreement with the belief that he could freely argue against that stipulation at sentencing without jeopardizing other advantageous portions of the plea agreement which he/she sought to gain by having his/her client plead in the first instance.  The bottom line is that Leandro Gomez's trial defense counsel would have committed a Sixth Amendment violation if he did what defendant claimed he should have done in his 2255 petition.

For the reasons set forth herein, Leandro Gomez's 2255 petition should be summarily dismissed.

DATED:  Honolulu, Hawaii, July 1, 2008.

>                    EDWARD H. KUBO, JR.
>                    United States Attorney
>                    District of Hawaii
>
>
>                    By /s/ Michael K. Kawahara
>                       MICHAEL K. KAWAHARA
>                       Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the attached was served via U.S. Mail, postage prepaid, on the following:

>LEANDRO GOMEZ, III
>#40390-048
>P.O. Box 5500
>Adelanto, CA 92301
>
>   Defendant Pro Se

DATED:  Honolulu, Hawaii, July 1, 2008.

/s/ Rowena Kang