EDWARD H. KUBO, JR.        2499
United States Attorney

LARRY L. BUTRICK           3910
Chief, Criminal Division

MICHAEL K. KAWAHARA        1460
Assistant U.S. Attorney
Room 6-100, Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Mike.Kawahara@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 2 3 2006

at____o'clock and ____min.____M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 05-0300JMS-01 |
| Plaintiff, | ) ) ) | MEMORANDUM OF PLEA AGREEMENT [LEANDRO GOMEZ, III] |
| VS. | ) ) | |
| LEANDRO GOMEZ, III, also (01) known as "Leo", | ) ) | |
| NATHANIEL RUSSELL, also (02) known as "Bobo" or "Bo", | ) ) | |
| PAMELA MAHEALANI NEWTON, (03) | ) | |
| JOHN CORNIEL, JR., (04) | ) | |
| CYRINAH L. AKEN, also (05) known as "Cyrinah L. Solomon", | ) ) ) | |
| CHARLES R.K. FARREN, (06) | ) | |
| REED KALEOOKALANI AKEN, (07) SENIOR, | ) ) | |
| ROGER MANU BATES, also (08) known as "Manu", | ) ) | |
| TIMOTHY JAMES SULLIVAN, (09) also known as "Tim", | ) ) | |
| GILBERT GOMEZ, also (10) known as "Glen", | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OF PLEA AGREEMENT
[LEANDRO GOMEZ, III]

Pursuant to Rule 11 of the Federal Rules of Criminal

EXHIBIT ___1___

Page __1__ of 20 Pages

Procedure, the UNITED STATES OF AMERICA, by its attorney, the United States Attorney for the District of Hawaii, and the Defendant, Leandro Gomez, III (hereinafter "defendant" or "Leandro Gomez"), and his retained attorneys, Kenneth R. Elliot, Esq., of Vista, CA, and Benjamin R.C. Ignacio, Esq., of Honolulu, HI, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the First Superseding Indictment returned July 28, 2005 (hereinafter "Indictment"), which charges him with the following crimes:

(A) <u>Count 1</u>: Conspiring with his named defendants to distribute and to possess with intent to distribute five-hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, said offense occurring from a time unknown to the Grand Jury up through and including on or about July 21, 2005, in violation of 21 U.S.C. 846, 841(a)(1), and 841(b)(1)(A);

(B) <u>Count 2</u>: Possession with intent to distribute five-hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, said offense occurring on or about May 13, 2005, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(A);

(C) <u>Count 3</u>: Possession with intent to distribute five-hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, said offense occurring on or about May 28, 2005, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(A); and

(D) <u>Count 4</u>: Possession with intent to distribute five-hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, said offense occurring on or about June 9, 2005, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(A).

Defendant has already received a copy of this Indictment.

2. Defendant also knows that the prosecution has filed on August 22, 2005 that "Special Information as to Prior Drug Convictions of Defendant Pursuant to Title 21, United States Code, Section 851" (hereinafter "Special Information"), for the purpose of seeking enhanced sentencing under the relevant drug trafficking statutes due to his prior felony drug conviction in State of Nevada v. Leandro Gomez, District Court of Clark County Case #C177240, Department #II (hereinafter referred-to as "prior felony drug conviction").

(a) <u>Factual stipulation as to prior felony drug conviction</u>: Defendant has previously received a copy of this Special Information, and he hereby admits to the following facts, such that an evidentiary hearing in accordance with 21 U.S.C. 851 to prove the factual allegations of the Special Information will not be necessary:

(1) All of the facts and averments describing defendant's prior felony drug conviction, as contained and recited in the Special Information, are correct;

(2) This felony drug conviction is final at the present time and was also final as of the time period charged in the Indictment; and

(3) The charged crime therein was and is a felony offense under Nevada state law.

3. Defendant has read the charges and allegations against him contained in the Indictment and Special Information, and these charges have been fully explained to him by his

attorney. In making his decision to plead guilty, defendant has had the full opportunity to consult with his undersigned defense attorneys, and he is fully satisfied with the legal representation and advice he has received from his defense attorneys.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

5. Defendant will enter a voluntary plea of guilty to Count 1 of the Indictment (conspiracy to distribute/possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers). At the time of sentencing, the prosecution will dismiss Counts 2, 3, and 4 of the Indictment insofar as defendant herein is concerned.

6. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

7. Defendant enters this plea because he is in fact guilty of the crime charged against him in the Indictment, and he also agrees that this plea is voluntary and not the result of force or threats.

8. Taking into account his prior felony drug conviction as alleged in the Special Information, Defendant understands that the statutory penalties for the offense to which

he is pleading guilty is an imprisonment term of at least twenty (20) years and up to life, a fine of up to $8,000,000, or both, and a term of supervised release of at least ten (10) years and up to life. See 21 U.S.C. 841(b)(1)(A).

  A. At the discretion of the Court, defendant may also be denied any or all federal benefits, as that term is defined in 21 USC §862, (a) for up to five years if this is defendant's first conviction of a federal or state offense consisting of the distribution of controlled substances, or (b) for up to ten years if this is defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances. If this is defendant's third or more conviction of a federal or state offense consisting of the distribution of controlled substances, the defendant is permanently ineligible for all federal benefits, as that term is defined in 21 USC §862(d).

  B. In addition, the Court must impose a $100 special assessment as to each felony count to which the Defendant is pleading guilty. Defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though

not require, the prosecution to withdraw from this agreement at its option.

9. Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty:

A. Up through July 21, 2005, co-defendant Nathaniel Russell (also known as "Bobo"), with the assistance of co-defendants Pamela Mahealani Newton, John Corniel, Jr., and Cyrinah L. Aken, distributed methamphetamine on the Island of Maui, Hawaii. Russell's primary methamphetamine buyers were co-defendants Roger Manu Bates and Charles R.K. Farren.

B. Up through July 21, 2005, Leandro Gomez resided in Las Vegas, Nevada. Leandro Gomez was Russell's primary source of methamphetamine during 2005. Leandro Gomez was assisted in his methamphetamine trafficking activities in Las Vegas by co-defendants Timothy James Sullivan and Gilbert Gomez (the latter of whom was Leandro Gomez's cousin and resided with him). Leandro Gomez would either have the methamphetamine delivered to couriers who Russell sent to Las Vegas to pick it up, or have it mailed via small parcel service (as UPS) to a Maui address designated by Russell and his associates.

D. Gilbert Gomez's assistance included picking up and dropping off at the Las Vegas Airport the persons who Russell

sent to courier the purchase money to Las Vegas and carry the methamphetamine back to Maui. Gilbert Gomez would also take the purchase money from the couriers to Leandro Gomez and deliver the methamphetamine back to the couriers.

      E. On or about May 11, 2005, Corniel received approximately four (4) pounds of methamphetamine in a UPS shipment which was sent by Leandro Gomez and Sullivan, which shipment is more specifically described as follows:

> One (1) UPS parcel, bearing Tracking #N3531349191, for "UPS Next Day Air" delivery, with the sender being "Tim Sullivan, Mail Store & More, 889 S. Rainbow Blvd, Las Vegas, NV", and the recipient being "Jason Chang, 1110 Puana St, Makawao, HI 96768" (hereinafter referred-to as "Subject Parcel #1).

From this methamphetamine shipment in Subject Parcel #1, Corniel delivered approximately two (2) pounds to Bates, and approximately 31 ounces of methamphetamine to Farren.

      (1) On May 13, 2005, Bates was arrested by Maui Police Department Officers, who at that time recovered the methamphetamine described in paragraph 11(a)(1)(I) of this Agreement from Bates' possession. This was the unsold remainder of the two pounds of methamphetamine which Bates had received from Corniel on or about May 11, 2005. Inasmuch as the methamphetamine provided by Corniel to Bates and Farren on or about May 11, 2005 came from the same source, namely Leandro Gomez, the purity and quality of the methamphetamine found in

Bates' possession would be illustrative of the entire methamphetamine shipment sent in Subject Parcel #1.

F.  On May 25-26, 2005, co-defendant Reed Kaleookalani Aken traveled from Maui to Las Vegas, NV.  Reed Aken was couriering approximately $66,000 in cash for the purpose of purchasing about seven (7) pounds of methamphetamine from Leandro Gomez; Reed Aken was acquiring this methamphetamine for Russell and his Maui associates.

G.  Upon arrival in Las Vegas on May 26, 2005, Reed Aken gave the money to Gilbert Gomez, who in turn gave it to Leandro Gomez.  Reed Aken thereafter received approximately two (2) pounds of methamphetamine from Leandro and Gilbert Gomez.  On May 28, 2005, Reed Aken was traveling back from Las Vegas to Maui, through Los Angeles; he was externally bodycarrying this methamphetamine under the clothes he was wearing.  While at the Los Angeles International Airport, Reed Aken was found to be in possession of these two pounds of methamphetamine, which is more specifically described in paragraph 11(a)(1)(II) of this Agreement.  This methamphetamine was seized by law enforcement officers.

H.  On June 9, 2005, Leandro Gomez and Sullivan caused the following parcel to be mailed via United Parcel Service (UPS) from Las Vegas to Maui:

> One (1) UPS Parcel, bearing Tracking #1ZA2V1030175431754, bearing "UPS Next Day Air"

labels and an indicated shipping weight of 7 pounds, with the sender being "Stock 2 Show, 905 S. Main St, Las Vegas, NV 89101, and the recipient being "Shawn Chong, 1110 Puana, Makawao, HI 96768" (hereinafter referred-to as "Subject Parcel #2").

Subject Parcel #2 contained the methamphetamine which is described in further detail in paragraph 11(a)(1)(III) of this Agreement, and constituted the remaining amount of the methamphetamine shipment paid-for with the money Reed Aken had transported to Las Vegas on May 25-6, 2005. Leandro Gomez knew that this methamphetamine was intended for Russell and that all of it was going to distributed to other persons. This methamphetamine was also seized by law enforcement officers.

10. Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the Defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

11. Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

    a. <u>Factual stipulations</u>:

        (1) <u>Quantity of methamphetamine involved in</u>

<u>Count 1</u>: As determined by the DEA Southwestern Laboratory, the methamphetamine involved in the conspiracy charge in Count 1 of the Indictment was determined to be as follows:

### I. <u>Methamphetamine found in defendant Roger Manu Bates' possession on Maui on May 13, 2005 (from Subject Parcel #1)</u>:

| <u>Drug Ex.#</u>: | <u>Where Found</u>: | <u>Controlled Substance</u>: | <u>Net Wgt</u>: | <u>Purity</u>: | <u>Pure Drug Wgt</u>: |
|---|---|---|---|---|---|
| 1 | Backpack | d-Methamphetamine HCl | 443.1 gm | 91% | 403.2 gm |
| 2 | Thermos | d-Methamphetamine HCl | 166.2 gm | 93% | 154.5 gm |
| 3 | Backpack | d-Methamphetamine HCl | 7.5 gm | 88% | 6.6 gm |
| | AGGREGATE NET AMOUNTS: | | **616.8 gm** | | **564.3 gm** |

### II. <u>Methamphetamine found in defendant Reed Kaleookalani Aken's possession at the Los Angeles International Airport on May 28, 2005</u>:

| <u>Drug Ex.#</u>: | <u>Where Found</u>: | <u>Controlled Substance</u>: | <u>Net Wgt</u>: | <u>Purity</u>: | <u>Pure Drug Wgt</u>: |
|---|---|---|---|---|---|
| 1 | Body-carried | d-Methamphetamine HCl | 921.1 gm | 83% | 764.5 gm |

III. <u>Methamphetamine found in Subject Parcel #2 on June 9, 2005</u>:

| Drug Ex.#: | Controlled Substance: | Net Wgt: | Purity: | Pure Drug Wgt: |
|---|---|---|---|---|
| 4a-e | d-Methamphetamine HCl | 1,809 gm | 79% | 1,429.0 gm |
| AGGREGATE AMOUNTS OF METHAMPHETAMINE FOUND IN THE POSSESSION OF BATES, REED AKEN, AND IN SUBJECT PARCEL #2: | | **3,346.9 gm** | | **2,757.8 gm** |

d-Methamphetamine Hydrochloride ("HCl") is a methamphetamine salt and a Schedule II controlled substance. For equivalency purposes, there are about 28.35 grams in one ounce, and approximately 453.6 grams in one pound. <u>See</u> Measurement Conversion Table, Guideline 2D1.1(c).

  b. <u>Offense level stipulations</u>:

  (1) Given the quantity of methamphetamine involved in the offense of conviction, as described in the preceding subparagraph, defendant's Base Offense Level is "38" (1½ KG or more of "ice" and/or methamphetamine (actual)). <u>See</u> Guideline 2D1.1(c)(1)).

  c. Defendant also agrees that he is an organizer, leader, manager, or supervisor in a criminal activity within the meaning of Guideline 3B1.1(c), for which a two-level increase must be assessed.

  d. The United States Attorney agrees that Defendant's agreement herein to enter into a guilty plea

11

EXHIBIT 1
Page 11 of 20 Pages

constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to Defendant. Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if defendant is otherwise eligible. The Defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the probation office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

    12. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

    13. The parties are presently unaware of any factual disputes affecting the sentencing of defendant herein.

    14. The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a). Defendant knowingly waives the right to appeal,

except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

    a. The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

    b. If the Court imposes a sentence greater than specified the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

    c. The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

15. The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. Subject to the exceptions noted in the previous paragraph, the Defendant is surrendering his right to challenge any sentence within the statutory maximum, or the manner in which it was determined, including, but not limited to, a sentence that the Defendant perceives to be an incorrect application of the Guidelines. The Defendant further agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

16. The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

17. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. If Defendant persisted in a plea of not guilty to the charges against him he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c. If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

d. At a trial, whether by a jury or a judge, the

prosecution would be required to present its witnesses and other evidence against the Defendant. Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on his own behalf. If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

  e. At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

  f. At a trial, Defendant would have a right to have the jury determine beyond a reasonable doubt the quantity and weight of the controlled substances charged in the Indictment.

  18. Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

  19. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

  20. Should the Court refuse to accept this Agreement,

it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

21. Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

22. The Defendant agrees that he will fully cooperate with the United States.

    a. He agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify in connection with this and other cases, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others indicted later in this and other investigations, and related civil proceedings, as well as all other criminal cases in which he has assisted law enforcement authorities.

    b. Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office of the District of Hawaii at any time

and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c. Defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crime in this case or any subsequent charges related to the investigation in this case, at which the prosecution requests him to testify.

d. Pursuant to § 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under § 1B1.8(b) of the Sentencing Guidelines.

e. Defendant shall not violate any Federal, State or local laws.

23. In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter. Defendant understands that this does not bar the use of information and

evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

24. Pursuant to Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense. Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a minimum sentence for the charge in the Indictment in the Hawaii case on the ground that Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. Defendant understands that:

    a. The decision as to whether to make such a request or motion is entirely up to the prosecution.

    b. This Agreement does not require the prosecution to make such a request or motion.

    c. This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

    d. Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the

Guidelines or to impose a sentence below the minimum level established by statute.

DATED: Honolulu, Hawaii, January 20, 2006.

AGREED:

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

LEANDRO GOMEZ, III
Defendant

LARRY L. BUTRICK
Chief, Criminal Division

KENNETH R. ELLIOT
BENJAMIN R.C. IGNACIO
Attorney for Defendants

MICHAEL K. KAWAHARA
Assistant U.S. Attorney