IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>    vs.<br><br>LEANDRO GOMEZ, III,<br><br>              Defendant. | CR. NO. 05-00300 JMS (01)<br><br>ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER FIRST STEP ACT (COMPASSIONATE RELEASE), ECF NO. 602 |

## ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER FIRST STEP ACT (COMPASSIONATE RELEASE), ECF NO. 602

## I.  INTRODUCTION

In 2006, Defendant Leandro Gomez, III ("Defendant") pled guilty to a charge of conspiracy to possess with intent to distribute 2.758 kilograms of pure methamphetamine.  *See* ECF No. 173 at PageID # 74.  Because the Government filed a 21 U.S.C. § 851 Special Information based on a prior Nevada state court felony drug conviction, Defendant's mandatory minimum was increased from 10 to 20 years (120 to 240 months).  ECF No. 75; Pre-Sentence Investigation Report ("PSR") ¶ 105, ECF No. 327 at PageID # 2004.  Based on the charged conduct alone and his criminal history, Defendant's United States Sentencing Guideline ("Guideline") range was 360 months to life.  PSR ¶ 107, ECF No. 327 at PageID

# 2004.  Ultimately, Defendant was sentenced to a term of imprisonment of 284

months.  ECF No. 320 at PageID # 432.  With the retroactive application of

Guideline Amendment 782 in 2014, Defendant became eligible for further

reduction of his sentence to 230 months.  ECF No. 515 at PageID # 1422; ECF No.

602-1 at PageID ## 1746-47.  But because of the mandatory minimum, his

sentence was only reduced to 240 months.  ECF No. 514 at PageID # 1421.

Defendant now moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for

compassionate release from the Federal Correctional Institution in Sandstone,

Minnesota ("FCI Sandstone").   ECF No. 602.  He argues that compassionate

release is warranted because (1) his 240-month sentence is higher than the 230-

month sentence he would have received in light of the First Step Act's sentencing

reforms; and (2) pre-existing medical conditions place him at increased risk of

serious illness or death should he contract COVID-19.  *Id.*

The court determines that Defendant has not demonstrated

extraordinary and compelling reasons to warrant compassionate release.  Thus,

based on the following, Defendant's Motion for Compassionate Release is

DENIED.

## II.  <u>BACKGROUND</u>

On January 23, 2006, Defendant pled guilty to conspiring to possess

with intent to distribute 500 grams or more of methamphetamine in violation of 21

U.S.C. §§ 846, 841(a)(l) and 841(b)(l)(A).  ECF No. 173 at PageID ## 72-74.  The

conspiracy involved the transportation of 2.758 kilograms of actual

methamphetamine from Las Vegas to Maui for resale.  PSR ¶ 9, ECF No. 327 at

PageID ## 1985-86.

Based on this drug quantity, Defendant received a Guideline base

level offense of 38.  PSR ¶ 61, *id.* at PageID # 1996.  Defendant received a two-

level upward adjustment based on his central role in the conspiracy—making

arrangements for others to transport the methamphetamine to Maui and directing

others to receive money for drug purchases and delivering the drugs.  *Id.* at ¶ 64,

ECF No. 327 at PageID # 1996.  He also received a three-level downward

adjustment for acceptance of responsibility, resulting in a total offense level of 37.

PSR ¶¶ 67-69, *id.* at PageID # 1997.  With a criminal history category VI, PSR ¶¶

72-82, *id.* at PageID ## 1997-2000, Defendant's advisory Guideline range was 360

months to life.  PSR ¶ 107, *id.* at PageID # 2004; *see also* Guideline Sentencing

Table (2007), 2007 Federal Sentencing Guidelines Manual, Chapter 5, Part A,

*available at* https://www.ussc.gov/guidelines/archive/2007-federal-sentencing-

guidelines-manual (last visited April 2, 2021).

Normally, the mandatory minimum for Defendant's offense conduct

is 10 years.  *See* 21 U.S.C. § 841(b)(1)(A).  But because the Government filed a

Special Information pursuant to 21 U.S.C. § 851, ECF No. 75, the mandatory

minimum was enhanced.  In 2006, when Defendant was sentenced, the filing of a § 851 Special Information triggered enhanced mandatory minimum sentences under 21 U.S.C. § 841 based on prior "felony drug offenses," defined as any drug offense "that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country."  21 U.S.C. § 802(44).  The Government's Special Information relied on Defendant's 2001 felony conviction in Nevada state court for selling 1.7 grams of methamphetamine and possessing with intent to sell 5.5 grams methamphetamine.  ECF No. 75; PSR ¶¶ 5, 74, ECF No. 327 at PageID ## 1984-85, 1998.  Based on Defendant's prior Nevada state court felony drug conviction, his mandatory minimum sentence increased from 10 years to 20 years (240 months).  PSR ¶ 106, ECF No. 327 at PageID # 2004.

But the enhanced mandatory minimum had no real impact on Defendant's sentence.  The court departed downward from the Guideline range of 360 months to life, and sentenced Defendant to 284 months in prison.  ECF No. 325 at PageID # 444.  Even this downward departure, however, left Defendant with a sentence 44 months greater than the 240-month mandatory minimum.

In 2016, Defendant, represented by the Federal Public Defender, moved pursuant to 18 U.S.C. § 3582(c)(2) for a two-level reduction in his sentence based on retroactive application of Guideline Amendment 782.  ECF Nos. 512 & 513.  Specifically, Defendant moved for his sentence to be lowered by applying a

reduction proportional to that applied to his pre-Amendment 782 Guideline range. *See* ECF No. 515.  Originally, the court sentenced Defendant to 284 months, a downward departure of 76 months or 21.1% from the bottom of his Guideline range (360 months).  Thus, Defendant sought a 21.1%, or 62-month, reduction from the bottom of the newly applicable Guideline range of 292 to 365 months. ECF No. 602-1 at PageID ## 1746-47 (citing ECF No. 512).  This reduction would bring his sentence to 230 months.  *Id.* at PageID # 1747.  The court granted Defendant's Motion on March 28, 2016.  ECF No. 514.  But because of the mandatory minimum, the court could only reduce his sentence to 240 rather than 230 months, a reduction of 18% rather than 21%.  *Id*.

Defendant is now 44 years old and has a projected release date of October 22, 2022.  *See* https://www.bop.gov/inmateloc/ (last accessed Apr. 2, 2021); ECF No. 602-2 at PageID # 1757.  While in prison, Defendant has taken multiple educational classes, earned his GED, completed a non-residential drug treatment program, and worked continuously.  *See generally* ECF No. 602-5. Further, while in prison, Defendant has "worked hard to hone his artistic skills." ECF No. 602-1 at PageID # 1752.  As a result, he has been offered a job as a customized painter in an autobody shop upon his release from custody.  ECF No. 602-7 at PageID # 1789.

Defendant has also received four disciplinary infractions over the last fifteen years—possession of an unauthorized item, abuse of phone privileges, possession of a hazardous tool (a wrench), and fighting with another person. ECF No. 602-5 at PageID # 1783. None of these infractions occurred within the last five years. *Id.*

On May 27, 2020, Defendant applied to FCI Sandstone's Warden for compassionate release based on the First Step Act's sentencing reforms and COVID-19 concerns. ECF No. 602-3 at PageID # 1760. The Warden denied the request on June 1, 2020. *Id.* at PageID # 1762. Defendant appealed on June 15, 2020, *id.* at PageID # 1763, and that appeal was denied on June 30, 2020. *Id.* at PageID # 1764. On February 20, 2021, Defendant, represented by court-appointed counsel, moved for compassionate release before this court based both on the 10-month sentencing disparity created by First Step Act reforms, and health concerns related to COVID-19. ECF No. 602. The Government filed its Opposition on March 8, 2021. ECF No. 608. This matter is decided without a hearing pursuant to Local Rule 7.1(c).

## III.  DISCUSSION

### A.    Legal Framework

Both the compassionate release mechanism Defendant invokes and his argument as to why compassionate release is warranted stem from reforms

implemented through the First Step Act of 2018.  The court sets forth the pertinent

provisions of the Act before turning to the substance of Defendant's arguments.

### 1.    *Compassionate Release*

The First Step Act substantially increased the ability of federally

incarcerated persons to seek reduction of their sentence under the "compassionate

release statute," 18 U.S.C. § 3582(c)(1)(A).  *United States v. McCoy*, 981 F.3d

271, 275 (4th Cir. 2020).  Before passage of the First Step Act, courts could only

consider granting compassionate release upon a motion by the Bureau of Prisons

("BOP").  *Id.* at 276.  But with the First Step Act, Congress amended

§ 3582(c)(1)(A) to "remove the Bureau of Prisons from its former role as

gatekeeper over compassionate release petitions."  *Id.* (internal quotation and

citation omitted).  As amended, § 3582(c)(1)(A) now allows defendants to file

motions for compassionate release on their own behalf, so long as they first

"exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to

bring a motion on [their] behalf or the lapse of 30 days from the receipt of such a

request by the warden of the defendant's facility, whichever is earlier."  Once

administrative remedies have been exhausted, a court may grant a defendant's

motion for compassionate release if "after considering the factors set forth in [18

U.S.C.] section 3553(a) to the extent that they are applicable," it finds that

"extraordinary and compelling reasons warrant such a reduction" and that "such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

Thus, the court may reduce Defendant's sentence if: (1) Defendant has exhausted the required administrative remedies; (2) after consideration of the applicable section 3553(a) factors, the court determines that Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and (3) the reduction is consistent with any applicable Sentencing Commission policy statements.

Although § 3582(c)(1)(A)(i) does not define "extraordinary and compelling reasons," the Sentencing Commission has addressed the meaning of this phrase in its policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13.  Specifically, the commentary to the Guideline defines "extraordinary and compelling reasons" as "terminal illness, an elderly inmate's rapidly declining health, and care for dependent family members."  *United States v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 502-03 (S.D. Iowa 2020) (citing Guideline § 1B1.13 cmt. n.1).  The commentary also contains a catch-all provision that allows the BOP Director to determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the three other, specifically enumerated reasons.  Guideline § 1B1.13 cmt. n.1(D).

8

The policy statement was promulgated before the First Step Act provided Defendants the ability to file a motion for compassionate release (and, without a quorum, the Sentencing Commission has been unable to amend the Guidelines post-First Step Act).  Several courts have thus determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release.  *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (stating that "U.S.S.G. § 1B1.13 is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (stating that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion"); *McCoy*, 981 F.3d at 281 (explaining that because "the First Step Act has removed the BOP, quite deliberately, from its gatekeeping role, the BOP's authority to determine the existence of 'other reasons' under Application Note 1(D) is irreconcilable with the amended § 3582(c)(1)(A)" and concluding that when a defendant "exercises his new right to move for compassionate release on his own behalf" "§ 1B1.13 is not an 'applicable' policy statement at all"); *see also United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."); *but see United*

9

*States v. Arceneaux*, 830 F. App'x 859, 859-60 (9th Cir. Dec. 8, 2020) (mem.) (affirming district court's denial of compassionate release, apparently based, in part, on consideration of § 1B1.13(2)).

Previously, this court agreed that it could consider the "full slate" of extraordinary and compelling reasons, although for slightly different reasons. That is, the court determined that the Guideline commentary's fourth, catch-all provision empowering the BOP Director to determine whether other extraordinary and compelling reasons exist applies equally to the court when ruling on motions for compassionate release. *See United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020). Regardless of the ultimate reasoning applied, the court determines that it is not bound by Guideline § 1B1.13's restrictions, but instead may make its own independent determination whether extraordinary and compelling reasons warrant a sentence reduction.

### 2. *Mandatory Minimums*

The First Step Act also made "[m]onumental . . . changes to sentencing calculations." *Brooker*, 976 F.3d at 230. As relevant here, the First Step Act limited mandatory minimum enhancements based on prior drug convictions along two axes—the length of the mandatory minimums imposed and the range of offenses that trigger mandatory minimums in the first instance. For

convictions under 21 U.S.C. § 841(b)(1)(A),[1] the enhanced mandatory minimum based on a single prior conviction was reduced from 20 years to 15 years, and the enhanced mandatory minimum based on two or more prior convictions was reduced from life to 25 years.  In addition, the Act significantly limited the type and seriousness of prior drug convictions that trigger mandatory minimums.  Prior to the First Step Act, enhanced mandatory minimums could be triggered if a defendant had been convicted of *any* drug offense under federal, state, or foreign law punishable by more than one year.  21 U.S.C. § 802(44).  After the First Step Act, however, a defendant must have previously been convicted of one or more "serious drug felon[ies]," as that term is defined in 21 U.S.C. § 802(57) and 18 U.S.C. § 924(e)(2), in order to be subjected to an enhanced mandatory minimum sentence.  21 U.S.C. § 841(b)(1)(A).

Serious drug felonies are limited to (1) violations of specific federal statutes;[2] and (2) violations of state law involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance.  21 U.S.C. § 802(57); 18 U.S.C. § 924(e)(2).  Either way, to constitute a "serious drug felony" the offense must be punishable by "a maximum term of imprisonment of

---

[1]  Because Defendant was convicted under 21 U.S.C. § 841(b)(1)(A), the court references the pre- and post-First Step Act law relating to that statute only.

[2]  The Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or Maritime Drug Law Enforcement (chapter 705 of title 46).  *See* 18 U.S.C. § 924(e)(2).

ten years or more [as] prescribed by law." *See* 18 U.S.C. § 924(e)(2). In addition, the defendant must have served a term of imprisonment of more than one year and must have been released "from any term of imprisonment . . . within 15 years of the commencement of the instant offense." *See* 21 U.S.C. § 802(57); *see also United States v. Brown*, 2020 WL 7401617, at *5 (E.D. Wis. Dec. 17, 2020) (summarizing First Step Act changes).

## B.    Analysis

The court may grant Defendant's Motion for Compassionate Release if (1) Defendant has exhausted his administrative remedies; (2) extraordinary and compelling circumstances warrant release; and (3) release is consistent with any applicable Section 3553(a) factors. The parties do not dispute that Defendant has fully exhausted his administrative remedies. ECF No. 608 at PageID # 1959. But, for the reasons that follow, the court determines that the Defendant has not demonstrated extraordinary and compelling reasons justifying compassionate release. Because Defendant's Motion fails for this reason, the court need not consider whether compassionate release would be consistent with applicable Section 3553(a) factors. *See United States v. Terletsky*, 2021 WL 735699, at *6 (W.D. Wash. Feb. 25, 2021); *United States v. Ueki*, 2020 WL 5984347, at *4 n.10 (D. Haw. Oct. 8, 2020).

Defendant bears the burden to establish extraordinary and compelling reasons that justify compassionate release. *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020) (citations omitted). Defendant argues that compassionate release is appropriate because (1) his 240-month sentence is 10 months longer than the 230-month sentence he would have received had he been sentenced after enactment of the First Step Act; and (2) his age (44 years), obesity (BMI of 34.0 to 34.9), and possible diabetes place him at a high risk of severe complications, hospitalization, or death should he contract COVID-19 while incarcerated. ECF No. 602-1 at PageID ## 1735-1750.

Turning to the first argument, this court recently joined a growing majority of circuit and district courts in holding that although the First Step Act's non-retroactive reforms alone cannot constitute an extraordinary and compelling reason justifying compassionate release, "'the severity of a pre-First Step Act sentence, combined with the *enormous disparity* between that sentence and the sentence a defendant would receive today'" can, on an individualized basis, warrant compassionate release. *United States v. Lii*, 2021 WL 1113663, at *7 (D. Haw. Mar. 23, 2021) (quoting *McCoy*, 981 F.3d at 275) (emphasis in original); *see also, e.g.*, *United States v. Haynes*, 2021 WL 406595, at *5 (C.D. Ill. Feb. 5, 2021) ("[C]ourts may consider individual defendants' circumstances and weigh whether a

particular sentencing disparity is truly 'extraordinary and compelling' on a case-by-case basis.").

   This analytical framework, "allowing for the provision of individual relief in the most grievous of cases," accords with Congress' express intent not to make First Step Act sentencing reforms retroactive across the board.  *See McCoy*, 981 F.3d at 286-87 ("[N]ot *all* defendants convicted under [the prior sentencing scheme] should receive new sentences, but . . . the courts should be empowered to relieve some defendants of those sentences on a case-by-case basis.") (emphasis in original) (citation omitted).  "Put another way, when undertaking an 'individualized assessment' as to a defendant's circumstances, courts may properly consider both the '*sheer and unusual length*' of a sentence given under the former sentencing regime and the '*gross disparity*' between that sentence and the sentence 'Congress now believes to be an appropriate penalty for the defendants' conduct.'" *Lii*, 2021 WL 1113663, at *8 (emphasis added) (quoting *McCoy*, 981 F.3d at 285); *see also United States v. Urkevich*, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in [defendant's] sentence [may be] warranted by . . . the injustice of facing a term of incarceration *forty years longer* than Congress now deems warranted for the crimes committed.") (emphasis added).

   Thus, in *Lii*, the court granted compassionate release where the mandatory minimum for the defendant's possession with intent to distribute

approximately 100 grams of methamphetamine was enhanced from ten years to life in prison on the basis of two prior convictions for minor drug crimes (selling 0.27 grams of cocaine for $50 and possessing 3.09 grams of cocaine, 0.06 grams of marijuana, and two glass pipes). *Lii*, 2021 WL 1113663, at *8. In that case, the sentencing reforms created an "enormous disparity." Had Lii been sentenced post-First Step Act, his mandatory minimum would have been lowered along both "axes"—only one prior conviction would have triggered an enhanced mandatory minimum, and that minimum would have only been 15 years. *Id.* Moreover, the post-First Step Act mandatory minimum would have been commensurate with the defendant's Guideline range (157-188 months pre-Amendment 782, 130-160 months post-Amendment 782). *Id.* But due to the harshness of the pre-First Step Act sentencing laws, Lii received a sentence of life in prison. *Id.*

The court found that this gross disparity constituted extraordinary and compelling circumstances, explaining that:

> The disparity between a 15-year sentence and a lifetime in prison is clear. But it is particularly striking when considering that Defendant was not a large-scale methamphetamine trafficker and his prior convictions were of a minor nature (that is, selling a very small quantity of methamphetamine in one, and the simple possession of a user quantity in another). Stated differently, the sentence enhancement triggered by Defendant's prior convictions for minor drug crimes was "enormous," creating an equally *"enormous disparity"* between his sentence and the sentence "Congress now believes to be an appropriate penalty for [his] conduct."

15

*Id.* (emphasis added) (quoting *McCoy*, 981 F.3d at 285) (emphasis added); *see also, e.g.*, *United States v. Day*, 474 F. Supp. 3d 790, 804 (E.D. Va. 2020) (granting relief where mandatory sentence would now be 15 years rather than life); *Ledezma-Rodriguez*, 472 F. Supp. 3d at 504-05 (granting relief where mandatory sentence would be 10 years rather than life).

Of course, "holding a severe sentencing disparity *can* constitute an 'extraordinary and compelling' reason is not the same as holding it *will*." *Haynes*, 2021 WL 406595, at *6-7. And the same extraordinary and compelling circumstances present in *Lii* are absent here. First, the disparity between the sentence Defendant received and the one he would have received under the post-First Step Act sentencing regime is small. Indeed, in contrast to the chasmic gap between a 15-year sentence and a lifetime of imprisonment, the space between 230 months and 240 months is quite slight—a difference of just 10 months or 4.1%. Moreover, the 240-month mandatory minimum is not "grossly disproportionate" to the "appropriate penalty" for the offense conduct. After application of Amendment 782, the Guideline range for Defendant's offense conduct was 292 to 365 months. Thus, the mandatory minimum is significantly lower than the Guideline range and it is only the 21.1% downward departure that causes a disparity between defendant's sentence and the sentence he would have received post-First Step Act. A 240-month sentence is not an "enormous disparity"; rather,

16

it is comfortably within the appropriate sentencing range for Defendant's serious drug trafficking offense. *Compare, e.g.*, *United States v. McPherson*, 454 F. Supp. 3d 1049, 1053 (W.D. Wash. 2020) (granting a sentence reduction to a defendant "sentenced to over 32 years in prison," which is "15 years beyond what is now deemed a fair penalty by our law"); *Haynes*, 2021 WL 406595, at *6-7 (reducing defendant's 105-year sentence based on "massive disparity" created by First Step Act amendments, in part because "the national average sentence for murder . . . [is] approximately 21 years" and "[w]hile Defendant's multiple armed robbery crimes were undeniably serious, the Court doubts any reasonable person would suggest they are deserving of a sentence 5 times the length of the average sentence for murder. Defendant's case is one illustrating how severe sentencing mandates can create outcomes wholly divorced from our notions of justice").

Turning to the next argument, Defendant asserts that his age (44), obesity (BMI of 34.0 to 34.9), and possible diabetes place him at increased risk should he contract COVID-19. *See* ECF No. 602-1 at PageID ## 1735-1750. These conditions do not warrant compassionate release. First, Defendant's age does not place him at an increased risk of contracting COVID-19. As stated by the CDC:

> The risk for severe illness from COVID-19 increases
> with age, with older adults at highest risk. For example,
> people in their 50s are at higher risk for severe illness
> than people in their 40s. Similarly, people in their 60s or

> 70s are, in general, at higher risk for severe illness than
> people in their 50s.  The greatest risk for severe illness
> from COVID-19 is among those aged 85 or older.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-

adults.html (last visited April 2, 2021).[3]

Next, although there is no evidence conclusively showing that

Defendant suffers from diabetes or even pre-diabetes, the court will assume that

Defendant is diabetic.  This condition, coupled with his obesity, places Defendant

at increased risk should he contract COVID-19.  *See*

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

medical-conditions.html (last visited April 2, 2021).  But the COVID-19 situation

at FCI Sandstone is currently well managed, with zero inmates and six staff

members currently testing positive.  *See* https://www.bop.gov/coronavirus/

(COVID-19 resource page) (last visited April 2, 2021).  And the vaccination

process is underway, with 104 staff members and 96 inmates at FCI Sandstone

---

[3] As the Government properly notes, though Defendant may have a slightly higher risk than those in younger age brackets, he is not in a high-risk age group.  ECF No. 608 at PageID # 1960 (citing https://www.cdc.gov/coronavirus/2019-ncov/covid data/investigations/discovery/hospitalization-death-by-age.html (explaining that relative to the reference demographic, the 18-29 demographic is 15 times more likely to die; the 40-49 demographic is 130 times more likely to die; and the 65-74 demographic is 1100 times more likely to die)).

Furthermore, relative to the age of other inmates in BOP custody, Defendant "falls squarely within the middle of the bell curve."  *Id.* (citing https://www.bop.gov/about/statistics/statistics_inmate_age.jsp (reflecting that 34% of inmates are between 36 and 45)).  Thus, Defendant's age does not place him at a higher risk than the average American or the average BOP inmate.

already fully vaccinated.  *Id.*  Finally, Defendant has already contracted COVID-19 once and has since recovered.  ECF No. 602-1 at PageID # 1740; ECF No. 606 at PageID # 1941.  This fact "counsel[s] heavily against a finding of extraordinary and compelling reasons to warrant release."  *United States v. Gibson*, 2021 WL 328913, at *3 (D. Haw. Feb. 1, 2021).

 As stated by the CDC, "[c]ases of reinfection of COVID-19 have been reported but are rare."  *See* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited April 2, 2021).  Likewise, the United States Department of Health and Human Services has stated that "of the millions of patients who have recovered from COVID-19, which is caused by a coronavirus, only a handful have been confirmed as having gotten the disease again.  Based on the reported recurrence rate from the early stages of ongoing research, the chances of becoming reinfected appear to be very small."  *See* https://combatcovid.hhs.gov/ive-had-covid-19 (last visited April 2, 2021).  And a study by the University of Oxford and the Oxford University Hospitals NHS Foundation Trust found that those who previously had COVID-19 are highly unlikely to contract the illness again for at least six months following the first infection.  *See* https://www.ox.ac.uk/news/2020-11-20-prior-covid-19-infection-offers-protection-re-infection-least-six-months (last visited April 2, 2021).  The National Cancer Institute agrees, reporting that the COVID-19 antibody

"protective effect is strong and comparable to the protection afforded by effective SARS-CoV-2 vaccines, although developing protection from vaccination is much safer than from natural infection.  This finding suggests that people who have a positive antibody test result using widely available assays have substantial immunity to SARS-CoV-2 and are at lower risk for future infection." *See* https://www.cancer.gov/news-events/cancer-currents-blog/2020/coronavirus-antibodies-protect-against-future-infection (last visited April 2, 2021).

In sum, neither Defendant's 10-month sentencing disparity, nor his health conditions—either separately or in combination—constitute "extraordinary and compelling" reasons justifying compassionate release.  Because the court finds that Defendant has not demonstrated extraordinary and compelling reasons, it need not determine whether the Section 3553(a) factors would support compassionate release.  *Terletsky*, 2021 WL 735699, at *6; *Ueki*, 2020 WL 5984347, at *4 n.10.

///

///

///

///

///

///

///

20

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Reduce Sentence

Under First Step Act (Compassionate Release), ECF No. 602, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 2, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Gomez,* Cr. No. 05-00300 JMS (01), Order Denying Defendant's Motion to Reduce Sentence Under First Step Act (Compassionate Release), ECF No. 602